1  Jing Xu
2  Superbloom2020@Gmail.com
3  P.O. Box 51081
4  Irvine, CA 92619
5  (424)408 7861
6  Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jing Xu,<br>             Plaintiff,<br>   vs.<br>City of Los Angeles,<br>Los Angeles Police Department,<br>E. Watt, #43716, John Doe,<br>J. Velazquez, #42422, John Doe,<br>Hernandez, #43223, John Doe,<br>Maldonado, #43223, John Doe,<br>Lt. Sanchez, #25339, John Doe,<br>             Defendant. | Case No.: 2:23CV01575-FLA(SP)<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE THE DEFENDANTS' ANSWER**<br><br>**Hearing Date:** October 17, 2023<br>**Hearing Time:** 10:00am<br>**Judge:** Sheri Pym<br>**Place:** Courtroom 4, 3rd Floor |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on October 17, 2023, at 10:00am, the Motion to strike filed herewith has been set for hearing.**

1

## Introduction

On March 2, 2023, Plaintiff filed the Complaint against the Defendants alleging Defendants violate 42. U.S. Code 1983.

On May 5, 2023, Docket Number 24 (also on May 15, 2023, Docket Number 29, and June 2, 2023, Docket Number 38), defendants filed their Answer, raising 8 affirmative defenses. Plaintiff now moves to strike the whole 8 affirmative defenses.

## Relief Sought

Plaintiff will move this Court for an order striking the entire Answer filed by Defendants on file herein, or in the alternative for an order striking ALL of the affirmative defenses contained in the Answer filed by Defendants. The grounds for this Motion to Strike are set forth below.

## Legal Standard

Under Federal Rule of Civil Procedure 12(f), allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Impertinent allegations are those that are not relevant to issues involved in the action *Fantasy,Inc. v. Fogerty,* 984 F. 2d 1524, 1527 (9th Cir. 1993). Immaterial matters are those with no essential or important relationship to the pleaded claims or defense.

## Defendants' First Affirmative Defense Should Be Stricken

**Matter to be Stricken**

Paragraph 1, page 5, First Affirmative Defense, Defendants claim that "Plaintiff's lawsuit is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994) and *Susag v. City of Lake Forest*, 94 Cal.App.4th 1401 (2002)".

**Grounds for Relief**

Here are the two cases holdings Defendants cited:

1. *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994)

In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U. S. C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983 (This case law was also cited in the Complaint Page 4, Paragraph 16).

2. <u>Susag v. City of Lake Forest</u>, 94 Cal.App.4th 1401 (2002)

It is established that a person convicted of resisting or obstructing a peace officer (Pen.Code, § 148, subd. (a)) may not maintain an action for the violation of federal civil rights (42 U.S.C. § 1983 (section 1983)) based on the officers' conduct during the arrest unless the conviction has been set aside through appeal or other postconviction proceeding.

This affirmative defense is insufficient as a matter of law. Plaintiff's lawsuit is NOT barred by <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-487 (1994) and <u>Susag v. City of Lake Forest</u>, 94 Cal.App.4th 1401 (2002), because the relevant criminal case (**Case Number**:0AR00237) was dismissed by Los Angeles city attorney pursuant to *Penal Code Section* 1385 (Cited in the Complaint Page 5, Paragraph 18). The state superior court granted that motion on March 5,2021. Furthermore, Plaintiff's **Petition for Factual Innocence**, *Penal Code Section* 851.8, was granted on February 7,2022, based on the evidence that did not establish Probable Cause to believe Plaintiff committed a crime (Cited in the Complaint Page 5, Paragraph 19).

*A **Petition for factual innocence** is a legal motion to assert that the petitioner is factually innocent of a crime for which they were arrested, regardless of whether they were ultimately charged or convicted. This petition seeks a formal determination by the court that there was no reasonable cause to believe the petitioner committed the alleged offense and the arrest should not have occurred in the first place. If granted, the effect is typically the sealing and eventual*

*destruction of the arrest record, making it as though the arrest never occurred from a legal perspective.*

Moreover, according to the case: <u>Larry Thompson v. Pagiel Clark</u>, et al. Supreme Court of United States, April 4,2022, "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983, a plaintiff need only show that his prosecution ended without a conviction." (Cited in the Complaint Page 3, Paragraph 14)

WHEREFORE, Defendants' First Affirmative Defense is redundant and should be stricken.

## **Defendants' Second Affirmative Defense Should Be Stricken**

**Matter to Be Stricken**

Paragraph 2, page 6, Second Affirmative Defense, Defendants claim that "The claims are barred by the statute of limitations set forth in California Civil Procedure, Section 340(3)".

**Grounds for Relief**

This affirmative defense is insufficient and immaterial as a matter of law because Plaintiff's claims, according to the Plaintiff's allegations, were filed within the applicable two-year statute of limitations under California law.

1. **Inapplicability of the Defense:** The defendants' Second Affirmative Defense claims that the Plaintiff's actions are barred by the statute of limitations set forth in California Civil Procedure, Section 340(3). This defense is legally insufficient because it is inapplicable to the Plaintiff's claims.

2. **Accrual Date and Timely Filing:** The relevant criminal case, from which the current civil claims derive, was dismissed on March 5, 2021(Cited in the Complaint Page 5 Paragraph 19). This would be the date on which Plaintiff's cause of action for the claims accrued. Pursuant to California law, Plaintiff has two years from the accrual date to file the lawsuit. Therefore, Plaintiff's civil complaint filed the complaint on March 2, 2023, which is within the two-year statute of limitations applicable to personal injury actions

under California law, as stipulated by Cal. Civ. Proc. Code § 335.1. Accordingly, Plaintiff's claims are timely and not barred by the statute of limitations.

3. **Inaccuracy of the Defense:** Given that the Plaintiff's claims were filed within the appropriate legal timeframe, the defense is not only insufficient but also immaterial and irrelevant to the case at hand. Allowing it to remain would unnecessarily complicate the proceedings and could mislead the court.

4. **Legal Authorities:** The statute of limitations for personal-injury lawsuits in California is set at two years for incidents occurring after January 1, 2003, under Cal. Civ. Proc. Code § 335.1. Further support for this two-year timeframe is found in *Jackson v. Barnes*, 749 F.3d 755, 761 (9th Cir. 2014), and *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).

5. **Efficiency of Proceedings:** Striking this defense at this juncture would streamline the proceedings and avoid the unnecessary consumption of the parties' and the Court's time and resources in litigating an inapplicable and immaterial issue.

WHEREFORE, Plaintiff respectfully requests that the Court strike the defendants' Second Affirmative Defense concerning the statute of limitations as it is legally insufficient and immaterial to the proceedings.

## Defendants' Third Affirmative Defense Should Be Stricken

**Matter to Be Stricken**

Paragraph 3, page 6, Third Affirmative Defense, Defendants claim that "The action is barred for lack of standing to sue".

**Grounds for Relief**

This Affirmative Defense is legally irrelevant, insufficient, and immaterial. *In Lujan v. Defenders of Wildlife* (90-1424), 504 U.S. 555 (1992), the Supreme Court created a three-part test to determine whether a party has standing to sue:
The plaintiff must have suffered an "injury in fact," meaning that the injury is of a legally

5

protected interest which is (a) concrete and particularized and (b) actual or imminent
 Pursuant to the three-part test articulated in *Lujan v. Defenders of Wildlife*, the plaintiff must also show causation and redressability herein establishes their standing to sue the police officers in question, as detailed below:

1. **Legal Insufficiency:** This Affirmative Defense is legally incorrect, as Plaintiff clearly meets all three prongs of the standing test established by the Supreme court *Lujan v. Defenders of Wildlife* (90-1424), 504 U.S. 555 (1992).

2. **Detailed Satisfaction of Lujan Criteria:** Plaintiff has suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent," thereby satisfying the first prong of the Lujan test. The Plaintiff has also shown that their injuries are directly attributable to the misconduct of the police officers (causation), and that these injuries could be redressed by a favorable court decision (redressability).

3. **Injury in Fact:** a). Concrete and particularized injury: The plaintiff was subjected to false arrest, false imprisonment, and malicious prosecution, all of which are distinct and personal harms. These are not hypothetical or generalized grievances, but specific injustices inflicted upon the plaintiff, leading to physical confinement, damage to reputation, emotional distress, and legal costs etc. b). Actual or imminent injury: The aforementioned harms have already occurred. The plaintiff has experienced these wrongs in actuality, as opposed to mere conjecture or anticipation.

4. **Causation:** The direct misconduct actions and decisions of the police officers led to the plaintiff's false arrest, false imprisonment, and subsequent malicious prosecution, establishing the necessary causation for standing. It is the misconduct and erroneous judgment of these officers that directly resulted in the tangible harms faced by the plaintiff.

5. **Redressability:** A favorable court decision can address and redress the plaintiff's injuries. By holding the responsible police officers accountable, the court can provide relief in the form of damages, declaratory judgments, or other remedies as appropriate. Such a verdict would serve as a remedy for the past wrongs faced by the plaintiff and potentially prevent

such injustices in the future.

In light of the aforementioned points, grounded in the standing criteria set forth in <u>Lujan v. Defenders of Wildlife</u>, Plaintiff possesses the necessary standing to initiate and pursue this lawsuit against Defendants under established legal standards. Allowing it to remain would serve only to complicate the proceedings and potentially mislead the court.

WHEREFORE, Plaintiff respectfully submits that the Court should strike Defendants' Third Affirmative Defense alleging a lack of standing as it is both legally insufficient and immaterial to the ongoing proceedings.

## Defendants' Fourth Affirmative Defense Should Be Stricken

**Matter to be Stricken**

Paragraph 4, page 6, Fourth Affirmative Defense, Defendants claim that "The action is barred by the doctrine of res judicata".

**Grounds for Relief**

This Affirmative Defense irrelevant and immateriality. Under **Established law on Res Judicata:** In a 2002 ruling, the California Supreme Court in <u>*Mycogen Corporation v. Monsanto Company*</u> stated that the doctrine of res judicata "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them."

**No Previous Litigation on the Same Issue:** It is pertinent to note the following:

1. The related criminal case was dismissed by the Los Angeles City Attorney, and grant by the State Superior court on March 5, 2021 (Cited the Complaint Page 5 Paragraph 19).
2. The motion **Petition for Factual Innocence** granted on Feb 27, 2022 (Cited the Complaint Page 5 Paragraph 19).
3. Critically, there has been no previous lawsuit relating to civil rights under 42 U.S.C 1983.

Based on the aforementioned grounds, the Defendants' claim under the Doctrine of Res Judicata lacks any factual or legal basis. The current action is distinct and has not been litigated

previously between the involved parties. The Affirmative Defense is legally unfounded.

WHEREFORE, Plaintiff respectfully requests that the Court strike the Fourth Affirmative Defense from the Defendant's Answer as it is irrelevant and immateriality.

## Defendants' Fifth Affirmative Defense Should Be Stricken

**Matter to be Stricken**

Paragraph 5, page 6, Fifth Affirmative Defense, Defendants claim that "As to the Federal claims and theories of recovery, the answering defendant is protected from liability under the doctrine of qualified immunity, because defendant's conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known".

**Grounds for Relief**

This Affirmative Defense is insufficient and Immateriality. In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court held that a ruling on a qualified immunity defense must be made early in the trial court's proceeding, because qualified immunity is a defense to stand trial, not merely a defense from liability. When there is a summary judgment motion for qualified immunity, the court should rule on the motion, even if a material issue of fact remains on the underlying claim. The Court also elaborated a 2-part test for whether a government official is entitled to qualified immunity:

First, a court must look at whether the facts indicate that a constitutional right has been violated. If so, a court must then look at whether that right was clearly established at the time of the alleged conduct. Under the *Saucier v. Katz* test, qualified immunity is not applicable if the official's conduct violated a constitutional right that was clearly established at the time of the alleged conduct."

1. **Clearly Established Rights Were Violated**

As established in *Saucier v. Katz*, 533 U.S. 194 (2001), the facts indicate Officers had not established probable cause for the arrest, as corroborated by the Petition for Factual Innocence

granted by the State Court (Cited the Complaint Page 5 Paragraph 19), unreasonably ignored Plaintiff's exculpatory evidence, and made the arrest without investigating the veracity of the accusations. Plaintiff's Fourth Amendment, Fifth Amendment, and Fourteenth Amendment constitutional rights was violated.

**2. The Rights Were Clearly Established at the Time of the Alleged Conduct**

Under the principles articulated in *Anderson v. Creighton*, 483 U.S. 635 (1987), a defendant's claim to qualified immunity hinges on whether a hypothetical reasonable official would have known that their conduct violated the Plaintiff's rights.

"A reasonable person would have known": This is what a reasonably competent officer would have believed. Courts apply this standard by looking at the information the officers had at the time of their actions, the specifics of the situation, and determine if the rights were clearly established and if a reasonable person in the officer's position would have known their actions were a violation of those rights.

Under the principles in *Ouza v. City of Dearborn Heights*, Michigan, United States Court of Appeals, Sixth Circuit, August 05, 2020, 969 F.3d 265 2020 WL 4499995. It was clearly established, for qualified immunity purposes, that arrestee had right to be free from arrest unsupported by probable cause, and that arresting officer was required to consider version of events set forth by arrestee and eyewitness when assessing probable cause. An officer is required to "consider the totality of the circumstances," and cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest (Cited the Complaint Page 3 Paragraph 15). Here's the facts that Officers had at the time of the arrest and situation.

    *a. Factual Context Surrounding the Arrest*

At the time of the incident, Officers individually handcuffed both Plaintiff and her spouse. The situation was fully under the Officers' control, and there was no apparent or immediate threat to safety. Importantly, there were no third -party witnesses to corroborate or contest the

events as they unfolded. Plaintiff served as an eyewitness and provided substantial evidence that substantiate her innocence (Cited the Complaint Page 10 Paragraph 34, it's also corroborated by the Police Report).

### b. Inconsistency in Accusations

Furthermore, the accusations made by the Plaintiff's spouse not only contradicted the statements made during the two separate 911 calls but also lacked corroborating physical evidence, such as injuries, as corroborated by the Police Report. The spouse's accusations were internally inconsistent and were refuted by the Plaintiff's statements and evidence (Cited the Complaint Page 9 Paragraph 32, it's also corroborated by the Police Report).

### c. Failure to Consider Exculpatory Evidence

Contrary to best practices and established law, the officers systematically failed to consider the Plaintiff's repeated requests to review her exculpatory evidence. This omission, especially in a controlled and secure environment, indicates a reckless disregard for the Plaintiff's constitutional rights. It further suggests a deliberate effort to secure a false arrest and initiate malicious prosecution (Cited the Complaint Page 10 Paragraph 34). The United States Supreme Court case *Brady v. Maryland*, 373 U.S. 83 (1963), is a landmark decision that established the legal principle known as the "Brady rule." This "Brady Rule" is now a fundamental part of American criminal law and affects all stages of the criminal justice process, from investigation to trial to post-conviction relief. "Must turn over all exculpatory evidence to the defendant in a criminal case. Exculpatory evidence is evidence that could exonerate the defendant or otherwise be favorable to the defense. The failure to disclose such evidence violates the defendant's right to due process under the Fourteenth Amendment."

### d. Lack of Probable Cause and Violation of Constitutional Rights

Under *Franks v. Delaware*, 438 U.S. 154 (1978), "a deliberate misrepresentation or omission by law enforcement that is material to the establishment of probable cause." Under the principles in *Ouza v. City of Dearborn Heights*, Michigan, United States Court of Appeals, Sixth Circuit, (2020), "for qualified immunity purposes, that arrestee had right to be free from arrest unsupported by probable cause, and that arresting officer was required to consider version of

events set forth by arrestee and eyewitness when assessing probable cause. The officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." (Cited the Complaint Page 3Paragraph 15)

Given these facts, which were available to the officers at the time of the arrest, it is evident that there was an insufficient basis to establish probable cause, as confirmed by the **Petition for Factual Innocence** granted by the State Court. Under such securely controlled conditions, a reasonably competent officer would have recognized that their actions constituted a violation of the Plaintiff's Fourth Amendment, Fifth Amendment, and Fourteenth Amendment rights.

In light of the above, it is clear that the Defendants' claim of qualified immunity should not stand. This is in accordance with the precedent set in *Saucier v. Katz*, 533 U.S. 194 (2001), which mandates a two-part test to determine the applicability of qualified immunity. The Plaintiff's constitutional rights were clearly violated, and these rights were well-established at the time of the officers' actions.

### 3. Defendants' Conduct Was Objectively Unreasonable and Exhibited Malice

Under *Malley v. Briggs*, 457 U.S. 335 (1986), qualified immunity does not protect officers who act unreasonably. "One who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause. Given malice and the lack of probable cause, the complainant enjoyed no immunity" Under *Franks v. Delaware*, 438 U.S. 154 (1978), "an arrest based on knowingly, intentionally, or with recklessly disregard for the truth violates the Fourth Amendment's guarantee against unreasonable seizures."

Officer Velazquez's deliberate misrepresentation that exculpatory evidence would be examined constitutes an explicit abuse of police authority and evinces malicious intent (Cited the Complaint Page 10 Paragraph 35). Further, Officers' reckless disregard for the Plaintiff's exculpatory evidence, as well as their failure to scrutinize the credibility of the accusations, signify both bad faith and an absence of professional accountability (Cited the Complaint Page

10 Paragraph 34). Particularly concerning is the Officers' willful refusal to heed the Plaintiff's consistent and unequivocal entreaties to consider her exculpatory evidence, reflecting not merely negligence, but a calculated indifference to factual accuracy and a malicious objective to pursue unwarranted prosecution. Additionally, the deliberate manipulation and mischaracterization of the Plaintiff's statements in the official police report raise serious questions about the objectivity and legality of the Defendants' actions (Cited the Complaint Page 12 Paragraph 38 & Complaint Exhibits 2).

In light of the detailed legal and factual arguments presented, it is evident that the Defendants' assertion of qualified immunity as their Fifth Affirmative Defense is both legally and factually untenable. Specifically, the defense is legally insufficient as it fails to withstand the two-pronged test established by the Supreme Court in *Saucier v. Katz*, whereby the Defendants' conduct patently violated clearly established constitutional rights. Moreover, their actions were objectively unreasonable, thus rendering the invocation of qualified immunity not only immaterial but also impertinent to the central issues in dispute in this case. In such a context, any reasonable person in the Defendants' position would have recognized that their actions were an infringement upon established rights.

WHEREFORE, Plaintiff respectfully petitions the Court to strike down the Defendants' legally insufficient Fifth Affirmative Defense, which erroneously posits qualified immunity as a bar to liability.

## Defendants' Sixth Affirmative Defense Should Be Stricken

**Matter to be Stricken**

Paragraph 6, page 6, Sixth Affirmative Defense, Defendants claim that "As to the federal claims and theories of recovery, the answering defendants are protected from liability under the doctrine of prosecutorial immunity".

**Grounds for Relief**

1. **Legal Insufficiency:** The doctrine of prosecutorial immunity, as established by *Imbler v. Pachtman*, 424 U.S. 409 (1976), grants prosecutors absolute immunity from civil suits under § 1983 for actions taken "in initiating a prosecution and in presenting the State's case." Importantly, this immunity does not extend to police officers, especially not for actions leading to false arrest, false imprisonment, or malicious prosecution. Without details linking Defendants' actions to the prosecutorial role specified in by *Imbler v. Pachtman*, the claim of immunity is legally insufficient.

2. **Specific Inapplicability to Police Officers:** Further legal clarification in *Burns v. Reed*, 500 U.S. 478 (1991), absolute prosecutorial immunity does not shield actions that are investigative or administrative in nature. Instead, these actions are covered by qualified immunity, which is more limited in scope. Moreover, it is well established that this form of immunity does not cover police officers for investigatory actions resulting in false arrest, false imprisonment, or malicious prosecution. As such, Defendants, being police officers, cannot avail themselves of this doctrine for the actions under scrutiny in this lawsuit.

3. **Irrelevance:** Given that the core allegations in the lawsuit relate to activities that are investigative and potentially fall under the categories of false arrest, false imprisonment, and malicious prosecution, the assertion of prosecutorial immunity is both legally irrelevant and materially inapplicable to the central issues of the case.

Plaintiff contends that the Defendants' actions, which form the basis of the current lawsuit, were not actions taken in their role as advocates for the State in a judicial proceeding but were instead investigative or administrative. As such, the doctrine of prosecutorial immunity does not apply. Without specific facts linking the Defendants' actions to their role as advocates in a judicial proceeding, the assertion of absolute prosecutorial immunity is inappropriate.

WHEREFORE, the Plaintiff respectfully requests that the Court strike the Sixth Affirmative Defense, as it does not present a sufficient and applicable defense under the circumstances.

## **Defendants' Seventh Affirmative Defense Should Be Stricken**

**Matter to be Stricken**

Paragraph 7, page 6, Seventh Affirmative Defense, Defendants claim that "Defendant City of Los Angeles and all defendants sued in their official capacities are immune from the imposition of punitive damages".

**Grounds for Relief**

1. **Overbroad Application of Immunity:** While it's true that the *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) case established that municipalities are generally immune from punitive damages under § 1983, this does not automatically extend to all officials sued in their personal capacities. Therefore, the Seventh Affirmative Defense is overly inclusive and legally insufficient as it fails to distinguish between those sued in official versus personal capacities.

2. **Malicious Intent or Reckless Indifference:** In *Smith v. Wade*, 461 U.S. 30 (1983), the United States Supreme Court addressed the issue of punitive damages in the context of a § 1983 action, which allows for lawsuits against individual public officers, who, acting under color of state law, violate someone's rights under federal law or the U.S. Constitution. "It was likewise generally established that individual public officers were liable for punitive damages for their misconduct on the same basis as other individual defendants." The Court held that punitive damages could be awarded in § 1983 cases if the defendant's conduct involves "reckless or callous indifference to the federally protected rights of others" or is driven by an "evil motive."
In accordance with the precedent established by *Smith v. Wade*, 461 U.S. 30 (1983), which allows for the awarding of punitive damages in § 1983 actions for conduct involving "reckless or callous indifference to the federally protected rights of others' or motivated by an evil motive," Plaintiff asserts that Defendants' actions are a clear fit within this legal framework. Specifically, Officers conducted arrests without establishing probable cause, as corroborated by the **Petition for Factual Innocence** granted by the
14

Motion to Strike Defendants' Answer

State Court, which in itself constitutes a deprivation of Plaintiff's constitutionally protected rights (Cited Complaint, Page 9, Paragraph 31). Moreover, the Officers deliberately ignored the Plaintiff's multiple requests to review exculpatory evidence and made false promises to the Plaintiff with the explicit aim of misusing their authoritative power (Cited Complaint, Page 10, Paragraphs 34, 35). Most damningly, the Officers materially misrepresented and distorted nearly all of the Plaintiff's statements in the official police reports, thereby evidencing not merely recklessness or indifference, but manifest malicious intent (Cited the Complaint, Page 12, Paragraph 38). Considering these facts, the Officers' misconduct exhibits both 'reckless or callous indifference to the federally protected rights of others' and is arguably driven by an "evil motive," thereby satisfying the conditions for the consideration of punitive damages as outlined in <u>Smith v. Wade</u>.

3. **Official vs. Personal Capacities:** Without a specific delineation between the capacities in which the defendants are being sued, and their respective conduct, the Seventh Affirmative Defense is not only overbroad but also premature and legally inadequate.
4. **Grounds for Motion to Strike:** Under Rule 12(f) of the Federal Rules of Civil Procedure, Plaintiff contends that the Seventh Affirmative Defense is legally insufficient, vague, and misleading in its current form because it fails to specify the capacity in which the Defendants are being sued and the nature of their alleged misconduct.

WHEREFORE, the Plaintiff respectfully petitions this Court to strike the Seventh Affirmative Defense, as it legally insufficient.

## Defendants' Eighth Affirmative Defense Should Be Stricken

**Matter to be Stricken**

Paragraph 8, page 6, Eighth Affirmative Defense, Defendants claims that "Defendants are immune from liability pursuant to the provisions of each of the following California statutes, each of which is set forth as a separate and distinct affirmative defense.

*Government Code*, Sections 815.2; 818; 818.2; 820.2; 820.6; 820.4; 822.2; 840.6 and 835.4 *Penal Code*, Sections 847."

**Grounds for Relief**

Paragraph 20 of the Defendants' answer sets forth 9 California Government Code Sections and a Penal Code section as grounds for immunity from liability. Specifically, they claim immunity pursuant to *Government Code*, Sections 815.2; 818; 818.2; 820.2; 820.6; 820.4; 822.2; 840.6 and 835.4 and *Penal Code*, Section 847.

1. **Federal Preemption:** When discussing the interplay between 42 U.S.C. § 1983 and state immunity provisions like those in the California Government Code Sections, the primary legal doctrine at play is the "Supremacy Clause" of the U.S. Constitution. This clause, found in Article VI, Clause 2, establishes that federal law, including the Constitution itself, is the supreme law of the land, taking precedence over state laws.
Claims under 42 U.S.C. § 1983 are federal causes of action that address the deprivation of civil rights under color of state law. The defenses available to such claims are generally derived from federal law, not state law. Thus, invoking a state statute, like Government Code Sections, as a defense to a federal claim may be inappropriate due to federal preemption, especially if the claims allege violations of clearly established federal constitutional rights.
2. **Lack of Specificity:** Defendants fail to provide a detailed explanation of how these nine Government Code Sections shield them from liability, especially in relation to the specific claims of false arrest, false imprisonment, and malicious prosecution under 42 U.S.C. 1983 federal claims. Such bare references to the Government Code Sections, without further elaboration, combined with the broad assertion of immunity without detailing the specific factual basis or relevant conduct, leave both the Plaintiff and the Court without a clear understanding of the basis for the Defendants' asserted immunity and render this defense conclusory and inadequate.
3. **Case Reference:** <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) and

*Howlett v. Rose*, 496 U.S. 356 (1990), this case references indicate state immunity provisions do not shield defendants from federal civil rights violations.

4. **Lack of Probable Cause:** Defendants did not meet the conditions outlined in California *Penal Code*, Section 847, which requires lawful arrest or reasonable cause to believe the arrest was lawful. Officers did not establish probable cause to believe that the arrest was lawful at the time it was made. This directly challenges the immunity provided in Section 847, which hinges on "reasonable cause to believe the arrest was lawful." Especially, Officers made the arrest with malice, aiming to initiate a wrongful prosecution. This could show that the arrest falls outside the protections offered by Section 847.

WHEREFORE, Plaintiff requests the Court to strike the Eighth Affirmative Defense from Defendants' Answer as it is improperly pleaded, irrelevant, ambiguous, insufficient, and fails to provide a clear basis for the claimed immunity.

## Request for Judicial Relief

Considering the foregoing arguments and authorities, Plaintiff respectfully requests that the Court grant the Motion to Strike Defendants' Answer in its entirety, and for such other and further relief as the Court deems just and proper under the circumstances. Additionally, Plaintiff requests that costs and attorney's fee incurred in connection with this motion be awarded to Plaintiff.

Respectfully submitted,
Date: 9.12.2023

∠⊀
Jing Xu

Plaintiff in Pro Se

Motion to Strike Defendants' Answer