Jin Xu

Superbloom2020@gmail.com

P.O.Box  51081

Irvine, CA 92619

PHONE (424)4087861

Plaintiff in Pro Per

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jin Xu,<br><br>        Plaintiff,<br><br>    vs.<br><br>City of Los Angeles,<br>Los Angeles Police Department,<br>E. Watts, #43716, John Doe<br>J. Velazquez, #42422, John Doe<br>Hernandez, #43215, John Doe<br>Maldonado, # 43223, John Doe<br>Lt. Sanchez, # 25339, John Doe<br>        Defendants. | Case No.: 2:23CV01575-FLA(SP)<br><br>**REQUEST FOR APPOINTMENT OF COUNSEL** |

    I, Jing Xu, The Plaintiff in this case, respectfully request an appointment of counsel in this action.

    Title 28 of the U.S. Code provides that "the court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. 1915 (e). "In deciding whether to appoint counsel pursuant to 28 U.S.C. 1915, the district court must evaluate both the

likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.* " *Wright v. Grady*, 2011 US App LEXIS  14708 (9th Cir. 2011).

"Neither of these factors is dispositive and both must be viewed together before reaching a decision on request of counsel." *Wilborn v. Escalderon*, 789 F. 2d. 1328, 1331 (9th Cir. 1896).

This request should be granted because:

**1.  There is a likelihood of success on the merits because:**

The sequence of events is as follows: The Plaintiff, seeking protection from spousal violence, made an urgent 911 call. When the spouse showed contrition and promised to cease violence, the Plaintiff attempted to cancel the police arrival with a second 911 call. The 911 operator informed the couple that the dispatched officers' arrival was inevitable but provided guidance on how to cancel this incident in front of the police.

Upon the officer's arrival, the spouse's efforts to convey the Plaintiff's cancellation of the call were met with an unanticipated and forceful police action. The officers handcuffed the spouse and coerced a false accusation against the Plaintiff. This accusation, unverified, let to the Plaintiff's immediate and hasty handcuffing. The Plaintiff's attempts to present exculpatory evidence and rectify the situation were disregarded by the officers. The plaintiff repeated entreaties to the officers to review the evidence were met with false assurances, ultimately resulting in the plaintiff being instructed to depart from the scena under the guise of ongoing investigation—a process never intended to be fulfilled.

Plaintiff was then erroneously arrested by the Los Angeles Police Department on a misdemeanor charge in 2020, based on an incorrect assessment of the aggressor. The relevant criminal case was dismissed and a Petition for Factual Innocence, Penal Code 851.8, was granted based on the evidence that did not establish Probable Cause to believe Plaintiff committed a crime.

The defendant police officers engaged in egregious misconduct, resulting in the false arrest, false imprisonment, and malicious prosecution without probable cause, which violent Plaintiff's constitutional rights. The misconducts are listed but not limited to below:

**First Misconduct**

Officers improper handcuffed Plaintiff's spouse represents an unlawful de facto arrest. This tactic, employed within a confined space, served to unduly intimidate the spouse into providing unfounded allegations against Plaintiff (**Please Note**, this officers first misconduct occurred at the outset of entire the incident that evening and served as the precursor for subsequent actions that constituted further misconduct.)

Officers initially designated the spouse as the suspect based on the first 911 call, handcuffed and pat him down immediately upon encountering him. The questioning that followed, executed in a restricted and confined environment, put his face to the wall, intensified the already heightened levels of stress and duress. It is within this coercive context that the spouse, feeling entrapped and coerced, was led to erroneously accusations against the plaintiff in an attempt to escape the situation.

It is critical to note that the officers maintained the use of handcuffs on the spouse throughout the entire incident, from the onset of the encounter until the plaintiff's arrest and subsequent leaving the scene. Handcuffing persisted beyond the point at which Officers' initial suspicious were dispelled, contrary to the guidelines set forth in People v. Stier, 2008 DJDAR 16561 California, "the detention must be temporary, last no longer than necessary for the officer to confirm or dispel the officer's suspicion, and be accomplished using the least intrusive means available under the circumstances.   (Florida v. Royer (1983) 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229; People v. Celis (2004) 33 Cal.4th 667, 674-675, 16 Cal.Rptr.3d 85, 93 P.3d 1027;  In re Carlos M. (1990) 220 Cal.App.3d 372, 384-385, 269 Cal.Rptr. 447.)  A detention that does not comply with these requirements is a de facto arrest requiring probable cause."

Furthermore, legal precedent establishers that Handcuffing a suspect during a detention

has only been sanctioned in cases where the police officer has a reasonable basis for believing the suspect poses a present physical threat or might flee.   (In People v. Stie (2008) re Antonio B., supra, 166 Cal.App.4th at p. 442, 82 Cal.Rptr.3d 693.) In this case scenario presented, the spouse exhibited no such risk, engaging with the officers in a manner that was polite, amiable, and compliant. The officers outnumber the one suspect spouse. There were four police, and all the three male police were physically much stronger and bigger than the spouse. The officers chose to handcuff the spouse even after patting him down, confirming he was unarmed, which contravenes the rationale for minimal intrusion upheld in People v. Stier (2008). "A pat down, while also intrusive, would have been less intrusive than handcuffing and more consistent with" the spouse's demeanor and Officers'" level of suspicion about the likelihood the spouse was armed.

The resultant holding that the spouse "had been involuntarily confined within the small, confined space without probable cause, that, at the time, the involuntary detention had exceeded the limited restraint permitted by Terry v. Ohio, 392 U.S. "It cannot fairly be said that the functional equivalent of an arrest had taken place."

In criminal proceedings, evidence derived from police impropriety is considered tainted by the 'fruit of the poisonous tree' doctrine. Analogously, in this civil rights lawsuit, the false allegations brought forth are a direct consequence of police misconduct. Given the involuntary nature of the spouse's accusations under such a coercive environment, it is evident that the entire subsequent criminal case against the plaintiff stems from this initial misconduct. Utilizing these coerced accusations as evidence infringes upon the plaintiff's constitutional rights.

**Second Misconduct**

Officers arresting Plaintiff predicated solely piece of unreliable testimony without proper investigation into the veracity of the accusations.

The spouse claims to be the victim, and the only evidence suggesting probable cause for the plaintiff's arrest stemmed from the spouse's allegations, which, given the spouse's

Request for Appointment of Counsel

potential as a suspect, cannot be deemed a reliable foundation for probable cause. The officers' failure to investigate the veracity of the allegations constitutes a significant dereliction of duty. In <u>Arpin v. Santa Clara Valley Transportation Agency</u> 1252 1150 (2001), "in establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." See <u>Fuller v. M.G. Jewelry</u>, 950 F.2d 1437, 1444 (9th Cir.1991). "[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause." <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 571 (2d Cir.1996); see also <u>Bullard v. City of New York</u>, 2003 WL 168444, a (S.D.N.Y. Jan. 20, 2003) ("denying a motion to dismiss where the facts as alleged by the plaintiff in his complaint established that the victim was not a reliable source of probable cause, and yet "he defendants did nothing to investigate the allegations, corroborate them, or pursue [the plaintiff's] claims that he was innocent.").

Thus, if there are "circumstances that raise[d] doubts as to the victim's veracity", the police were under some limited duty to investigate the matter further. <u>Singer v. Fulton County Sheriff</u>, 63 F.3d at 119 (1995).   This is especially true where the plaintiff and the complainant knew each other prior to the alleged incident. See <u>Mistretta v. Prokesch</u>, 5 F. Supp. 2d at 133 (1998) ("The most common situation in which such doubts arise is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation.").  Especially in this case, the plaintiff's spouse as a witness is himself a suspect as here. A false allegation by a civilian complainant should not be permitted to serve as a rubber stamp for an arrest.

## **Third Misconduct**

No supporting evidence to support the spouse's accusation.

Despite the spouse's baseless accusations that Plaintiff hit him with a metal bottle, there was no visible evidence of injury or physical harm to the spouse. The officers, upon viewing video evidence of the incident," could not observe the bottle making contact with the husband's head".

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Fourth Misconduct

   Officers unreasonably ignored Plaintiff's side story and exculpatory evidence.

   The story of Plaintiff's side contrasted significantly with the story of the spouse. Upon the officers' arrival, Plaintiff clarified that she was the originator of the 911 call seeking protection. After this call, the spouse ceased the violent behavior and apologized, motivated by a desire to de-escalate the situation prior to police involvement. In light of the cessation of violence and the spouse's apology, the plaintiff made a second call to 911 with the intent to withdraw the request for police arrival. Plaintiff clearly expressed to the police that Plaintiff intent to cancel the incident and they are fine now. (**Please Note**: The aforementioned event took place at the outset of the entire sequence of the incident, immediately following the initial alleged the First Police Misconduct involving the handcuffing and de facto arrest of the spouse).

   Despite Plaintiff's initial statements and the two 911 calls were contradicted by the spouse's accusations, the officers proceeded to handcuff Plaintiff without investigating the veracity of the spouse's accusations. Moreover, Officers afforded the Plaintiff no opportunity to articulate her side of the story before being handcuffed. Plaintiff promptly inquired the reason and unequivocally refuted any acts of violence towards the spouse. Plaintiff emphasized to Officers that there had been a critical misjudgment in identifying the aggressor and the actual victim in this incident. Moreover, when confronted with the claim of existing video evidence purportedly showing the plaintiff engaging in violence, Plaintiff expressed immediate skepticism regarding the authenticity and relevance of such footage, given the events of that evening. Plaintiff insisted that if such a video did exist, the officers must examine the time stamp to verify its pertinence to the incident in question. Plaintiff urged a meticulous review of the video to ensure the accuracy of its content and its chronological alignment with the alleged events.

   Despite Plaintiff repeated requests and pleas for Officers to review the exculpatory evidence such as the video record time, 911 calls details, and the video details etc., Officers

Request for Appointment of Counsel

unreasonably and willfully ignore it. There was no third-party witness for this incident, Plaintiff was an eyewitness to the incident and her statements and evidence were significant in proving her innocence. In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime but must independently investigate the basis of the witness' knowledge or interview other witnesses. See Fuller v. M.G. Jewelry, 950 F.2d 1437, 1444 (9th Cir.1991).

In the situation, the officers handcuffed both Plaintiff and her spouse individually. As the officers were in full control of the situation and there was no apparent danger present, they were not justified in disregarding Plaintiff's exculpatory evidence requests. Especially, when the only piece of evidence was from the witness/complainant who is a suspect, which is an unreliable resource. In obtaining such reliable information, officers cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officers must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if Officers have probable cause to make an arrest. Ouza v. City of Dearborn Heights (2020)

Subject and returned to the "totality of the circumstances" approach to evaluate probable cause based on an informant's tip in Illinois v. Gates (Supreme Court, 1983), the main defect of the two-pronged test, (1) revealing the informant's "basis of knowledge" and (2) providing sufficient facts to establish either the informant's "veracity" or the "reliability" of the informant's report. Justice Rehnquist concluded for the Court, was in treating an informant's reliability and his basis for knowledge as independent requirements. Instead, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." In evaluating probable cause. Failure to consider Plaintiff's side story, statements, requests, and exculpatory evidence, consider as compensated information for the spouse's deficient information, is lack of probable cause.

Plaintiff's repeated requests to officers checking the exculpatory evidence is also a "fair warning" that the officers' conduct would be unlawful if further supported by our precedent

Request for Appointment of Counsel

establishing that officers must consider both inculpatory and exculpatory evidence when assessing probable cause. <u>Ouza v. City of Dearborn Heights</u> (2020)

More importantly, warrantless arrest "standards must be "at least as stringent" for warrantless arrest as for obtaining warrant". See <u>Whitely v. Warden</u>, 401 U.S. 560, 566 (1971). For another case applying essentially the same probable cause standard to warrantless arrests as govern arrests by warrant, see <u>McCray v. Illinois</u>, 386 U.S. 300 (Supreme Court, 1967) (informant's statement to arresting officers met Aguilar probable cause standard).

**<u>Fifth misconduct</u>**

Officers failed to reconcile the inconsistencies in witness statements and physical evidence present at the scene.

The spouse initially claimed that the altercation occurred solely upstairs; however, the presence of physical evidence such broken glass downstairs contradicted this account. When questioned about the specifics of the alleged assault, the spouse's account varied. Initially, the spouse identified the left side of the head as the point of impact, but later claimed an inability to recall which side was struck. Furthermore, the spouse's estimation of the number of times they were hit by the Plaintiff shifted from "several" to an uncertain "maybe once?"

The spouse did concede to engaging in violent conduct towards Plaintiff, albeit under the claim of self-defense. This admission, alongside the inconsistency in the spouse's statements, does not conclusively establish self-defense and, under California Penal Code Section 13701, casts doubt on the identification of the dominant aggressor.

Despite the spouse's admission of pushing Plaintiff, purportedly in self-defense, the Plaintiff consistently did not say any violence by the spouse initially, which is corroborated by the Plaintiff's attempt to cancel the second 911 call. Post-handcuffing, Plaintiff maintained that the incident depicted in the video occurred at a different time, not corresponding with the incident in question.

Request for Appointment of Counsel

1
2
3
4
5
6

The officers neglected to consider the significant disparity in physical stature and strength between Plaintiff and the spouse, which could easily result in the Plaintiff being overpowered. By misidentifying the aggressor, there is a risk of perpetuating ongoing violence against a vulnerable individual. In accordance with California Penal Code Section 13701, officers are obligated to protect victims from further domestic violence, ensuring that individuals in a position of vulnerability are not left in continuing jeopardy.

7
8
9
10

**Six Misconduct**

If the officers consider Plaintiff's side story and had followed Plaintiff's request to check Plaintiff's exculpatory evidence at the time they arrest Plaintiff, it would have let them to a different decision.

11
12
13
14
15
16
17
18
19
20

Had officers showed Plaintiff the video, she would have been able to point out several obvious inconsistencies such as different clothe she was wearing, different location, different hair style etc. most significantly, the time shown on the video is moments after Plaintiff's first 911 call for protection from the spouse's violence. Both plaintiff and the spouse gave statements that the incident only happened before the first 911 call. Also, upon close scrutiny of the bodycam footage released to the Plaintiff, it is evidence that the police click on two slightly different videos of the same incident when they are holding the spouse's phone. Although the content of the video is substantially the same, they start seconds apart, apparent only by two different thumbnail photographs appearing on the phone, indicating that one video is necessarily copied.

21
22
23
24
25
26
27
28

**Totality of the circumstances**

Under the Fourth Amendment, an arrest must be predicated on probable cause, which is evaluated based on the totality of circumstances available to the officers at the time of the arrest. United States v. Humphries, 372 F.3d 653, 657 (4th Cir. 2004). Officers, when assessing the totality of the circumstances, appeared to rely solely on the spouse's uncorroborated information, while disregarding Plaintiff's side of the story and the exculpatory evidence prior to arrest Plaintiff. More importantly, Emergency 911 calls are often given a degree of credibility since they are made in real-time. Such selective

Request for Appointment of Counsel

consideration does not constitute a sufficient basis for establishing probable cause. The available evidence suggests that Officers arrested Plaintiff based on the spouse's unexamined charge, without a thorough independent investigation into the validity of the spouse's domestic violence allegations. If Officers did not independently investigate spouse's claim of domestic violence, they did not have probable cause to arrest Plaintiff. See Arpin v. Santa Clara Valley Transportation Agency 1252 1150 (2001).

Under Saucier v. Katz, (2001), the facts indicate that plaintiff's constitutional rights have been violated,.and the rights was clearly established at the time of the false arrest.

2. **The Plaintiff will have difficulty articulating her claims pro se due to the complexity of the legal issues involved because:**

I respectfully request the appointment of limited scope counsel to assist me with the discovery process in this case because I am encountering insurmountable challenges due to a combination of financial hardship, legal complexity, and language barriers.

**First,** I do not have income to support myself finding attorney on discovery process for this litigation. Since the commencement of the related criminal case in early 2020, I have been without job and income. As a non-citizen, the blemish of a criminal record has rendered me ineligible for visa applications, employment opportunities, and has effectively barred me from leaving and re-entering the United States to seek work abroad. Despite a successful Factual Innocence motion, a statutory three-year waiting period for record destruction, and the record destruction process is too complex and slow. An ongoing record destruction process that has left my life in a state of indefinite suspension.

**Second**, the discovery phase has proven to be beyond my capacity to navigate effectively. My initial requests for production, admission, and interrogatories were met with a near-universal response of objections. These requests were prepared with guidance from multiple consultations at the Federal Court Pro Se Clinic for over two months and extensive personal research in law library and online. Nevertheless, the precise legal and linguistic accuracy required to elicit the necessary facts from the discovery process is, regretfully,

Request for Appointment of Counsel

beyond my current ability.

The Pro Se Clinic has advised me that even seasoned attorneys find the discovery process challenging. Facing a team of experienced city attorneys exacerbates this challenge, creating a significant imbalance. The disparity in legal expertise, coupled with the language barrier as an individual for whom English is not a first language, presents a profound inequity. Without the capability to conduct discovery effectively, I am at an impasse; unable to gather the facts essential to substantiating my claims. The appointment of counsel would afford me the means to present my case clearly and accurately, ensuring a fair judicial process and upholding the integrity of this court's proceedings, as emphasized in Hunter v. Sokoloff (2020) "the need for discovery "does not necessarily qualify the issues involved as `complex'" because "[m]ost actions require development of further facts during litigation and a pro se litigant will seldom be in a position to investigate easily the facts necessary to support the case." Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986)"

**Third**, I urgently petition this Court for the appointment of limited scope counsel to guide me through the entire discovery process. Recognizing the Court's constraints, I would graciously accept, as an alternative, the appointment of counsel specifically for the purpose of conducting depositions.

The deposition stage represents a critical juncture wherein I must secure substantive responses from the defendants—responses that will underpin the strength of my case. As a pro se litigant facing formidable language and legal hurdles, the sophisticated nature of depositions presents a significant challenge. Without legal expertise, I am unprepared to effectively counter objections or refusals to answer deposition questions by the defendants, which could irreparably weaken my position. The provision of counsel, even limited to deposition assistance, is not simply a benefit—it is a necessity to traverse the complex legal landscape ahead. Without such support, I am at risk of being unable to fulfill the procedural and substantive demands of the discovery process, thereby stalling my pursuit of justice.

The appointment of counsel for discovery, and particularly for depositions, is

11

Request for Appointment of Counsel

imperative to ensure that my case is presented with the clarity and legal proficiency required for a just resolution. It is a fundamental plea from my position as a pro se litigant, without which I fear my ability to proceed will be severely compromised.

I earnestly appeal to the Court's commitment to fairness and justice in considering this crucial request, which I believe to be instrumental for the equitable determination of this matter.

Dated: 1.31.2024

Sign:

JING XU

Plaintiff in Pro Per

12